IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RYAN DOBBS,<br><br>    Plaintiff,<br><br>  v.<br><br>HEALTH IQ INSURANCE SERVICES, INC.,<br><br>    Defendant. | CIVIL ACTION<br>NO. 21-5276 |

**MEMORANDUM OPINION**

**Schmehl, J.**  /s/ JLS                   July 27, 2022

## I. INTRODUCTION

Before the Court is the motion to compel arbitration filed by Health IQ Insurance Services ("Defendant"). Plaintiff, Ryan Dobbs, filed a class action Complaint against Defendant, asserting Defendant's telemarketing calls to be a violation of his privacy rights under the Telephone Consumer Protection Act. Upon consideration of the parties' submissions and arguments, I will grant Defendant's motion to compel arbitration, and stay this action in its entirety.

## II. BACKGROUND

Defendant, Health IQ, is in the business of selling insurance plans and services. (Compl., ¶ 15.) On May 8, 2019, Plaintiff clicked an ad that Health IQ had placed on Facebook and was directed to Health IQ's website. (Declaration of Raj Vavilala ("Vavilala Decl."), ¶ 4.) After landing on Defendant's website, Plaintiff completed a multi-page form requesting information about insurance products. (Vavilala Decl., ¶ 5.) As he completed the web form, clicking next several times, Plaintiff provided Health IQ

1

with his name, address, email address, telephone number, age, gender, height, and weight. (Vavilala Decl., ¶ 6.) The last page of the form included the following relevant language immediately below the green "SUBMIT" button: "By clicking 'SUBMIT', you agree to our Privacy Policy and Terms of Use." (Vavilala Decl., ¶ 7.) Setoff from the rest of the text in blue, underlined font, the words "Terms of Use" were an active hyperlink to the full text of the Terms of Use. Plaintiff provided his contact information and clicked "SUBMIT." (Vavilala Decl., ¶ 9.) The phone number that Plaintiff provided to Defendant matches the number that Plaintiff identifies as his own in the Complaint. (Compare Vavilala Decl., ¶ 10 with Compl., ¶ 18.) Plaintiff alleges that starting in June 2021, he received at least four unsolicited phone calls and two text messages from Defendant. (Compl., ¶¶ 24-25.) According to Plaintiff, his cell phone number had been registered on the National Do Not Call Registry and the calls and texts that he received from Defendant violated the Telephone Consumer Protection Act ("TCPA") (Compl., ¶¶ 18, 20, 21, 62.) Pursuant to the TCPA, registration with the Do Not Call Registry allows an individual to avoid receiving unwanted telemarketing calls and to recover penalties should his or her privacy rights be willfully or knowingly violated. (Compl., ¶ 2-3.)

Defendant argues that Plaintiff assented to its Terms of Use when he provided his contact information and clicked "SUBMIT" after following Defendant's Facebook ad. Defendant's Terms of Use contain an arbitration provision that requires users to submit claims against Defendant to binding arbitration on an individual basis. (Vavilala Decl., Ex. A, p. 1.) The arbitration provision reads as follows:

> A. <u>Arbitration</u>. The parties shall use their best efforts to settle any dispute, claim, question, or disagreement directly through good-faith negotiations, which shall be a precondition to either party initiating a lawsuit or arbitration. All claims arising out of or relating to this Agreement and your

> use of the Service shall be finally settled by binding arbitration administered by the American Arbitration Association ("AAA") in accordance with the provisions of its Commercial Arbitration Rules and of its supplementary procedures for consumer-related disputes, excluding any rules or procedures governing or permitting class actions. The arbitrator, and not any court or agency, shall have exclusive authority to resolve all disputes arising out of or relating to this Agreement, including, but not limited to, any claim that all or any part of this Agreement is void or voidable. The arbitrator shall be empowered to grant whatever relief would be available in a court. The arbitrator's award shall be binding on the parties and may be entered as a judgment in any court of competent jurisdiction. To the extent the filing fee for the arbitration exceeds the cost of filing a lawsuit, [Defendant] will pay the additional cost.
>
> The parties understand that, absent this mandatory provision, they would have the right to sue in court and have a jury trial. They further understand that, in some instances, the costs of arbitration could exceed the costs of litigation and that the right to discovery may be more limited in arbitration than in court.

(Vavilala Decl., Ex A, § 20(A)). Furthermore, the Terms of Use allow users to opt out of the arbitration provisions by sending written notice to Defendant within 30 days. *Id.* § 20(C). Plaintiff did not send any opt out to Defendant. *Id.*

### III.   LEGAL STANDARD

The Federal Arbitration Act ("FAA") provides that a federal court must compel arbitration "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue." 9 U.S.C. § 4. Arbitration agreements are governed by ordinary state-law principles governing contract formation, and they "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *MZM Constr. Co. v. N.J. Bldg. Laborers Statewide Benefit Funds*, 974 F.3d 386, 402 (3d Cir. 2020). On the other hand, courts decide questions about the formation or existence of an arbitration agreement, namely the element of mutual assent. 9 U.S.C. § 4.

A motion to compel arbitration requires a court to determine "(1) whether a valid agreement to arbitrate exists and (2) whether the particular dispute falls within the scope of that agreement." *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005). A party can dispute the existence of an arbitration agreement by arguing that the arbitration clause itself is invalid. *MZM Constr.,* 974 F.3d at 397. A claim directed at the arbitration clause itself, such as a challenge that the clause lacked consideration, would go to the court. *Id.* at 398 n.7.

However, when parties have delegated certain issues to the arbitrator, such as the issue of whether the parties have agreed to arbitrate at all, the Court need only decide the validity of the assent. *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019) ("Just as a court may not decide a merits question that the parties have delegated to an arbitrator, a court may not decide an arbitrability question that the parties have delegated to an arbitrator."); *Singh v. Uber Technologies, Inc.*, 939 F.3d 210, 228 (3d Cir. 2019) (holding that where the FAA applies, all questions must be reserved for an arbitrator unless the court determines the question is not subject to an enforceable delegation clause). So, "unless the party opposing arbitration challenges 'the delegation provision specifically,' the district court 'must treat it as valid' and 'must enforce it' by sending 'any challenge to the validity' of the underlying arbitration agreement to the arbitrator." *MZM Constr.*, 974 F.3d at 399 (quoting *Rent-A-Center West, Inc. v. Jackson*, 561 U.S. 63, 72 (2010)). The "arbitrability issue" presumptively includes "allegations of waiver, delay, or a like defense to arbitrability." *Howsam*, 537 U.S. at 84 (*quoting Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp*., 460 U.S. 1, 25 (1983)). Additionally, a delegation clause may delegate the issue of whether a particular dispute falls within the

4

scope of the agreement to the arbitrator. *See Singh v. Uber Technologies, Inc.*, 939 F.3d 210, 228 (3d Cir. 2019) (holding that all questions subject to delegation clause were for arbitrator to decide, including whether parties' dispute fell within scope of arbitration agreement).

If a party challenges the whole contract, the claim must go to arbitration, unless the challenge is about mutual assent. *Id.* at 397–98. An arbitration clause is severable from the contract that contains it, and a party claiming that the whole contract lacked consideration must first adjudicate that claim in arbitration. *Id.*

A motion to compel arbitration is judged under a Rule 56 summary judgment standard when arbitrability is not apparent on the face of the complaint. *Shelton v. Comcast Corp.*, 2021 WL 214303, at *2 (E.D. Pa. Jan. 21, 2021). Under this standard, Defendant must show "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In the instant matter, arbitrability is not apparent on the face of the complaint and Defendant's motion is therefore evaluated under the Rule 56 standard.

**IV.   DISCUSSION**

In analyzing the instant set of facts, I must first determine whether the parties entered into a valid arbitration agreement. If so, I must then determine whether the arbitration agreement delegated issues such as arbitrability to the arbitrator. Plaintiff argues that the agreement to delegate issues of arbitrability and to arbitrate is invalid because it is illusory, because the Terms of Use can be changed at the will of Defendant. Plaintiff further argues that even if I conclude that the agreement is not illusory, the motion to compel arbitration should be denied because there is a material issue of fact as

to whether the parties entered into an agreement to delegate certain issues to an arbitrator. I do not find Plaintiff's arguments to be persuasive, and accordingly, I will grant Defendant's motion and send this matter to arbitration.

### A. Plaintiff Assented to Defendant's Terms and Conditions and Entered into a Valid Arbitration Agreement

As agreements to arbitrate are matters of contract, a valid arbitration agreement requires mutual assent. In the context of an electronic consumer transaction, the occurrence of mutual assent ordinarily turns on whether the consumer had reasonable notice of the merchant's terms of service agreement. *See Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014). Notice of an online merchant's terms either occurs through "clickwrap" agreements, which require website users to click on an "I agree" box after being presented with a list of terms and conditions of use, or "browsewrap" agreements, where a website's terms and conditions of use are generally posted on the website via a hyperlink at the bottom of the screen. *Nguyen*, 763 F.3d at 1176. Courts have also recognized a "modified clickwrap" agreement, where terms of use are presented as part of some other transaction, such that completing the transaction also accepts the terms of use. *See Weimin Chen v. Sierra Trading Post, Inc.*, 2019 WL 3564659, at *2 (W.D. Wash. Aug. 6, 2019) (distinguishing "clickwrap," "browsewrap," and "modified clickwrap" agreements); *see also Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 837 (S.D.N.Y. 2012) (finding Facebook's terms of use fell somewhere in between a pure browsewrap agreement and a pure clickwrap agreement because, although users were required to take an affirmative action by clicking "Sign Up" to agree to the terms of use, the terms were available only via a hyperlink below the "Sign Up" button).

Clickwrap agreements are evaluated with 'traditional principles of contract law and focus on whether the plaintiff had reasonable notice of and manifested assent to the clickwrap agreement.'" *Coulter v. Experian Info. Sols., Inc.*, 2021 WL 735726, at *5 (E.D. Pa. Feb. 25, 2021). Further, courts have held that "clickwrap" agreements manifest sufficient agreement to the terms in the contract. *See Zabokritsky v. JetSmarter, Inc.*, 2019 WL 2563738, at *3 n.30 (E.D.Pa., 2019).

In the instant matter, Plaintiff received notice of the hyperlinked Terms of Use, including the agreement to arbitrate potential claims, and manifested assent by clicking the "SUBMIT" button. The Terms of Use included a hyperlink, and the letters were purposely and conspicuously set off from the remaining text in a blue, underlined font. (Vavilala Decl., ¶ 8); *see Margulis v. HomeAdvisor, Inc.*, 2020 WL 4673783, at *5 (E.D. Mo. Aug. 12, 2020) (holding that website provided "constructive notice" of the Terms and Conditions when a hyperlink to the Terms and Conditions was conspicuously displayed in blue font). Further, the last page of Defendant's online information request form informed Plaintiff that "[b]y clicking 'SUBMIT', you agree to our Privacy Policy and Terms of Use." (Vavilala Decl., ¶ 7.) Plaintiff thus had notice that he would be bound by the Terms of Use and assented to those same terms when he clicked submit. *See Zabokritsky*, 2019 WL 2563738 at *3 (holding that sliding a button to indicate agreement to the Terms of Use is sufficient to indicate agreement).

In response, Plaintiff submits an affidavit in which he states that in May of 2019, he was "not in the market for health insurance," that he had a general practice of not filling out online forms, and that his cell phone's browser data does not currently show a visit to Defendant's website. (Dobbs Decl., ¶ 13-16.) However, Plaintiff does not state that he

7

never visited Defendant's website. Nor does he deny that he submitted the online form on Defendant's website to obtain information about insurance products. Plaintiff's conclusory statement that he did not enter into any agreement with Defendant (Dobbs Decl., ¶ 18) is insufficient to create an issue of material fact. *See Dicent v. Kaplan Univ.*, 2018 WL 4171600, at *4 (M.D. Pa. June 15, 2018), *report and recommendation adopted*, 2018 WL 4169072 (M.D. Pa. Aug. 30, 2018), *aff'd*, 758 F. App'x 311 (3d Cir. 2019). "Plaintiff's naked assertions that he never [signed the arbitration agreement] are insufficient to lead the Court to conclude otherwise." *Schrock v. Nomac Drilling, LLC*, 2016 WL 1181484, at *4 (W.D. Pa. Mar. 28, 2016). Accordingly, despite Plaintiff's attempts to create a factual issue, I find that he assented to Defendant's Terms of Use.

Having found that Plaintiff assented to Defendant's Terms of Use, I must next decide whether the Terms of Use contain a valid arbitration agreement. As set forth above, the Terms of Use contain a provision that states, *inter alia*, "[a]ll claims arising out of or relating to this Agreement and your use of the Service shall be finally settled by binding arbitration administered by the American Arbitration Association ("AAA") . . ." (ECF No. 2, Ex A, § 20(A)). When Plaintiff clicked submit and assented to Defendant's Terms of Use, he assented to the arbitration provision contained in the agreement as well. Accordingly, the parties entered into a valid arbitration agreement.

**B.  Plaintiff Agreed to Delegate Issues of Arbitrability to the Arbitrator**

The Terms of Use in this matter specifically state that "[t]he arbitrator, and not any court or agency, shall have exclusive authority to resolve all disputes arising out of or relating to this Agreement, including, but not limited to, any claim that all or any part of this Agreement is void or voidable." (ECF No. 2, Ex A, § 20(A)). Parties may delegate

resolution of gateway issues to the arbitrator, so long as they clearly and unmistakably evidence their intent to do so. *See Richardson v. Coverall N. Am., Inc.*, 811 F. App'x 100, 103 (3d Cir. 2020), *cert. denied*, 141 S. Ct. 1685 (2021).

The Terms of Use require disputes between Plaintiff and Defendant to be submitted to "binding arbitration administered by the [AAA] in accordance with the provisions of its Commercial Arbitration Rules." (ECF No. 2, Ex. A, § 20(A).) Rule 7 of the AAA's Commercial Arbitration Rules provides that the arbitrator "shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." *See* American Arbitration Association, Commercial Arbitration Rules and Mediation Procedures, at Rule 7(a). As stated by the Third Circuit, "[t]hat provision is about as 'clear and unmistakable' as language can get.'" *Richardson*, 811 F. App'x at 103 (*quoting Awuah v. Coverall N. Am., Inc.*, 554 F.3d 7, 11 (1st Cir. 2009)); *see also Carrone v. UnitedHealth Grp. Inc.*, 2020 WL 4530032, at *3 (D.N.J. Aug. 6, 2020) ("Numerous courts have found that, by incorporating the AAA rules, which need not be appended to the arbitration agreement, the parties have clearly and unmistakably committed to delegating the question of arbitrability to the arbitrator." (collecting cases)), *aff'd sub nom. Carrone v. UnitedHealth Grp. Inc*, 2021 WL 3520809 (3d Cir. Aug. 11, 2021). Accordingly, by incorporating the AAA rules, the parties in this matter clearly delegated threshold questions such as the question of arbitrability to the arbitrator.

In an attempt to circumvent this delegation, Plaintiff argues that the Terms of Use, including the delegation provision, are illusory and unenforceable because a provision in the Terms of Use give Defendant the right to modify them. Plaintiff argues that the Terms

9

of Use give Defendant the unfettered right to "change" the delegation provision "at any time," "for any reason," "with or without cause" and "without prior notice." ECF No. 11, pp. 1-2.

Plaintiff claims that he is challenging the delegation provision and argues that the terms of that provision can be changed at any time and are therefore illusory and unenforceable. However, he clearly is in fact challenging the agreement as a whole, as the terms he challenges come from other parts of the contract, not from the delegation provision, and apply to the entire agreement. The challenged terms state, *inter alia*,:

1. Changes to this Agreement

   We reserve the right to, at any time, with or without cause:

   • Change the terms and conditions of this Agreement . . . .

   Any changes we make will be effective immediately upon our making such changes available on the Applications or otherwise providing notice thereof. . .

13. Term & Termination

    . . . [Defendant] may immediately terminate this Agreement . . . or any portion thereof, at any time and for any reason, with or without cause, without prior notice.

ECF No. 2, Ex. A. These terms regarding changes and termination apply to the **entire agreement**, not just its delegation provision. In *Rent-A-Center, West, Inc. v. Jackson*, the Supreme Court found that unless a party "challenge[s] the delegation provision specifically," courts must enforce the delegation and "leav[e] any challenge to the validity of the [a]greement as a whole for the arbitrator." 561 U.S. 63, 72 (2010). Consistent with that precedent, this Court has confirmed that arguments that are not "levied specifically towards the delegation clause" are for the arbitrator. *See Colon v. Conchetta, Inc.*, 2017 WL 2572517, at *4 (E.D. Pa. June 14, 2017) (Kelly, J.).

10

In determining whether a party is specifically challenging a delegation provision or not, courts look beyond a party's "statement that it is challenging the delegation provision" to "the substance of the challenge." *In re StockX Customer Data Sec. Breach Litig.*, 19 F.4th 873, 885 (6th Cir. 2021). A challenge to the delegation provision that "recycles the same arguments that pertain to the enforceability of the agreement as a whole" is insufficient. *Id*. at 886.

A review of Plaintiff's brief shows that he clearly takes issue with the entire agreement and not with the delegation provision specifically. Plaintiff bases his challenge to the delegation clause (contained in Section 20(A) of the Terms of Use) on the modification provision which is contained in a separate section of the Terms (Section 1). Plaintiff has not made any arguments specific to the delegation clause. Although Plaintiff's section heading asserts that the delegation provision is illusory, the substantive argument that he makes in his brief does not support his heading. Rather, Plaintiff recycles the same arguments that apply to the contract as a whole, which is insufficient to challenge the delegation clause. *See Galvez v. JetSmarter, Inc.,* 2019 WL 4805431, at *6 (S.D.N.Y. Sept. 30, 2019) ("Although the relevant section headers in Plaintiff's brief refer to the illusory quality and unconscionability of the 'arbitration provision' specifically, Plaintiff's arguments clearly attack the validity of the [Agreement] as a whole."). Therefore, Plaintiff's argument that the delegation provision and the agreement as a whole is illusory due to Defendant's ability to change the terms is not an issue to be addressed by this Court. Rather, this issue is one for the arbitrator, as contemplated by the valid delegation provision that was entered into between Plaintiff and Defendant.

V.  **CONCLUSION**

For all of the reasons set forth above, Defendant's Motion to Compel Arbitration is granted and this matter is stayed.